# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

ELIZABETH ANN CHRISMAN, )
as Special Administrator of the Estate of )
Charlton Cash Chrisman, Deceased, and )
Individually as Surviving Mother and )
on behalf of the Heirs of )
Charlton Cash Chrisman, Deceased. )
)
             Plaintiff, )
)
v. ) Case No. CIV-17-1309-D
)
BOARD OF COUNTY COMMISSIONERS )
OF OKLAHOMA COUNTY, *et al.*, )
)
             Defendants. )

## **ORDER**

Before the Court is Defendants' Joint Motion to Dismiss [Doc. No. 23] filed by the Board of County Commissioners of Oklahoma County ("Board"), Oklahoma County ("County"), Sheriff P.D. Taylor, Michael Coburn, Kristian Rangel, Francisco Plascencia, and John Whetsel. Also before the Court is Defendant Colton Ray's Motion to Dismiss [Doc. No. 26], which Defendant Brian Harrison adopted [Doc. Nos. 35, 36]. Plaintiff filed a combined response in opposition [Doc. No. 30], and Defendants filed a joint reply [Doc. No. 33]. The matter is fully briefed and at issue.

## **BACKGROUND**

This case arises out of the death of Charlton Cash Chrisman while he was in Defendants' custody at the Oklahoma County Jail. Plaintiff Elizabeth Ann Chrisman, as Special Administrator of Mr. Chrisman's estate and his mother, asserts claims against the

Board, the County, Sheriff P.D. Taylor, John Whetsel, and detention officers Michael Coburn, Kristian Rangel, Francisco Plascencia, Colton Ray, Brian Harrison and John Doe.

To summarize, the Amended Complaint [Doc. No. 20] alleges:

- Mr. Chrisman was arrested by the Oklahoma City Police Department at Deaconess Hospital on April 18, 2017, after crashing his vehicle into the hospital emergency room lobby. Upon his arrest, he was taken to the Oklahoma County Jail, where he remained until his death on April 19, 2017.

- Mr. Chrisman was emotionally and psychologically unstable and was openly experiencing outbursts, hallucinations, delusions and confusion. Jail medical personnel noted that he needed to be placed on suicide watch.

- On a prior occasion in early 2017, Mr. Chrisman was confined at the jail. Jail medical personnel at that time recommended he undergo a mental health evaluation. Prior to that jail stay, Mr. Chrisman had been diagnosed with Anosognosia (impaired awareness of illness), had been a patient at the Crisis Center, and was released from the Crisis Center to Red Rock Mental Health Facility for appropriate medications.

- At the time of his most recent delivery to the Oklahoma County Jail, Mr. Chrisman had in his possession a vial of Olanzapine, an antipsychotic. It was evident from the prescribed vial that Mr. Chrisman had been a recent patient at Griffin Memorial Hospital in Norman, Oklahoma.

- Mr. Chrisman was placed in a separate cell and kept isolated from the other detainees. After being placed in this separate cell, Mr. Chrisman allegedly activated a sprinkler head on the cell ceiling, which caused the cell and outside hallway to flood.

- Mr. Chrisman's separate cell was well lit, and the door to the cell contained a window through which detention officers and jail personnel could clearly see Mr. Chrisman. Mr. Chrisman was unarmed and stripped down to his underwear.

- Defendant detention officers, named above, assumed positions by the cell door. Ray and Harrison stood in front of the cell door each holding pepper ball shotguns.

- The Amended Complaint alleges that all Defendant detention officers worked "together and in concert with each other." [Doc. No. 20 at ¶ 37].

- Prior to opening the cell door, one Defendant detention officer told Ray and Harrison not to talk to Mr. Chrisman, but to "just shoot him." *Id.*

- One Defendant detention officer opened the cell door while Ray and Harrison fired pepper balls at Mr. Chrisman, hitting Mr. Chrisman about 16 times.

- Mr. Chrisman's hands and arms were at his side when the cell door opened, as he stepped out, and as the pepper balls were fired. Mr. Chrisman attempted to protect himself by covering his head and body with his arms and by running down the hall away from the pepper ball blasts.

- Defendant detention officers physically battered Mr. Chrisman while his hands were cuffed and his feet were shackled, including execution of "knee drops" on Mr. Chrisman's back. They sprayed pepper spray in Mr. Chrisman's face and covered his face with a spit hood, which inhibited Mr. Chrisman's ability to breathe.

- Defendant detention officers were part of a "S.E.R.T." team, a specialized team of detention officers used to respond to problem prisoners.

- Following Mr. Chrisman's death and after reviewing the video of the incident, Sheriff Taylor reassigned all Defendant detention officers to positions within the jail where they would not have contact with prisoners.

- After Mr. Chrisman's death, Sheriff Taylor publicly admitted that various policies and procedures at the jail were improper, including the policy that allowed S.E.R.T. team members to self-train.

- Since January 1, 2016 and the filing of the Amended Complaint on January 10, 2018, thirty prisoners inside the Oklahoma County Jail have died. Mr. Chrisman was the twentieth prisoner to die inside the Oklahoma County Jail.

- The Board, the County and Whetsel deliberately refused to pay the jail's contracted medical provider the millions of dollars it was owed.

Plaintiff asserts federal claims under 42 U.S.C. § 1983 based on Chrisman's Fourth Amendment right to be free from unreasonable seizures and excessive force, and his Fourteenth Amendment due process rights (as a pretrial detainee) to appropriate medical care. Plaintiff also asserts state law claims for negligence, battery and excessive force.

## STANDARD OF DECISION

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The "plausibility standard" announced in *Twombly* and *Iqbal* is not a "heightened standard" of pleading, but rather a "refined standard." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (*citing Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011)). Under the "refined standard," plausibility refers "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik*, 671 F.3d at 1191; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting Twombly*, 550 U.S. at 570).

Further, the Tenth Circuit has noted that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Khalik*, 671 F.3d at 1191 (*quoting Kansas Penn Gaming*, 656 F.3d at 1215). "Thus, [it has] concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" *Id.* (*quoting Robbins*, 519 F.3d at 1247).

4

"In other words, Rule 8(a)(2) still lives. There is no indication the Supreme Court intended a return to the more stringent pre-Rule 8 pleading requirements." *Id.* It remains true that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*quoting Twombly*, 550 U.S. at 555); *see also al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009) ("*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden.").

Finally, "[w]hile the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [its] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1192 (*citing Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Sanchez v. Hartley*, 810 F.3d 750, 756 (10th Cir. 2016) (*citing Twombly*, 550 U.S. at 556).

## DISCUSSION

Defendants move to dismiss on the following grounds: (1) asserting claims against the Board, the County, and Sheriff Taylor in his official capacity is redundant; (2) the Amended Complaint fails to state a claim upon which relief may be granted; and (3) Oklahoma's Governmental Tort Claims Act bars Plaintiff's negligence claims.

### A. Asserting Claims Against the Board, the County, and Sheriff Taylor in his Official Capacity is Redundant and Unnecessary

Here, Plaintiff has sued Sheriff Taylor in his official capacity, the Board and the County. These claims all amount to actions against the County and are permissible methods of pleading a *Monell*[1] claim. Although permissible under § 1983, such claims are duplicative and unnecessary given that Plaintiff has named the Board as a defendant. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("an official capacity suit is, in all respects other than name, to be treated as a suit against the entity."); OKLA. STAT. tit. 19, § 4 (a suit against a county must be brought by naming the board of county commissioners of that county); *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) (bringing "a claim against [a sheriff] in his official capacity … is the same as bringing a suit against the county."). Accordingly, Plaintiff's claims against Sheriff Taylor[2] in his official capacity and Plaintiff's claims against Oklahoma County are dismissed.

### B. The Amended Complaint Includes Facially Plausible Claims for Relief

Defendants assert that Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted because (1) it contains "group" allegations that do not provide sufficient notice to each individual defendant of Plaintiff's allegations against them; (2)

---

[1] *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658 (1978).

[2] Whether an official has final policymaking authority for purposes of § 1983 is a question of state law. *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 786 (1997). Under Oklahoma law, the sheriff is the final policymaker regarding the county's jail. OKLA. STAT. tit. 19, § 513; OKLA. STAT. tit. 57, § 47; *see also Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999). Thus, the County (by suit against the Board) may be liable for Sheriff Taylor's actions as a final policymaker regarding the Oklahoma County Jail.

Plaintiff fails to allege any facts to show that Defendants had notice of an unconstitutional policy; and (3) punitive damages are barred against municipalities under § 1983. Plaintiff in her response acknowledges her request for punitive damages against the Board and the County was made in error and withdraws the request. Pl.'s Resp. [Doc. No. 30 at 20].

**(1) Plaintiff's Allegations Sufficiently Provide Fair Notice to Each Defendant**

Citing to *Robbins*, *Gray* and *DuBois*, Defendants allege that the Amended Complaint repeats the same allegations against every Defendant without explaining "who did what to whom." *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909 (10th Cir. 2012); *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008); *DuBois v. Bd. of County Comm'rs of Mayes County, Okla.*, Case No. CIV-12-677-JED-PJC, 2014 WL 4810332 (N.D. Okla. Sept. 29, 2014). The Court disagrees. Viewing the Amended Complaint as a whole, Plaintiff's allegations are sufficient to provide all Defendants fair notice of Plaintiff's claims and the grounds upon which they rest.

In *Robbins*, the parents of a deceased infant brought a § 1983 action against the Oklahoma Department of Human Services ("DHS"), the DHS director, local DHS social workers, unnamed DHS employees, a daycare center, and the owner-operator of the daycare center. *Robbins*, 519 F.3d at 1246. The parents claimed that DHS had "informed" them that the daycare was the "only" daycare facility available due to their financial restrictions. *Id.* The child suffered blunt force trauma to the head while at the daycare and died. *Id.* The owner-operator of the daycare was charged with first-degree murder after the Chief Medical Examiner listed the manner of death as a homicide. *Id.*

7

The Tenth Circuit held that the complaint failed to give adequate notice of the plaintiffs' due process claims and that the plaintiffs had failed to adequately plead supervisory liability. *Id.* at 1252-1253. The court noted that "[c]ontext matters" and "[f]air notice under Rule 8(a)(2) depends on the type of case," and the plaintiffs must "nudge their claims across the line from conceivable to plausible." *Id*. at 1248-1249. This requires enough facts "to give the defendants notice of the theory under which their claim is made." *Id*. at 1249. It does not, however, mean that complaints in cases subject to qualified immunity must plead "all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." *Id.*

Throughout their complaint, the parents in *Robbins* repeatedly referred to "the defendants" without specifying which defendant did which act. *Id.* at 1250. Count 1 of the complaint grouped all the defendants together. *Id.* The court noted that the alleged tortious acts committed by the director of DHS and the private owner and operator of the daycare would be entirely different in character. Further, the alleged tortious acts of the individual social workers involved would be different. Thus, grouping these defendants in one single allegation was a mistake. *Id*. The complaint did not reference which defendants had direct contact with the child or the child's parents or how the defendants could be individually liable for deprivations of the child's constitutional rights. *Id.*

Similarly, the Tenth Circuit in *Gray* noted in Footnote 9 that "[t]o provide adequate notice as to the nature of multiple claims against multiple defendants, a complaint must isolate the allegedly unlawful acts of 'each defendant.' Otherwise, defendants have no way of knowing 'what particular unconstitutional acts they are alleged to have committed.'"

*Gray*, 672 F.3d 909, 921 n. 9.[3] The plaintiffs in *Gray* referred collectively to "Defendants" or "University Hospital" and did not specify what acts were attributable to which defendant. *Id.*

Here, however, the Amended Complaint does isolate the allegedly unlawful acts of each Defendant, separating each Defendant by count. Plaintiff alleges in Counts Two through Six that Ray, Harrison, Coburn, Rangel and Plascencia violated Mr. Chrisman's Fourth and Fourteenth Amendment rights by using excessive force. Pl.'s Am. Compl. [Doc. No. 20 at 18-35]. Plaintiff alleges that all defendant detention officers gathered outside Mr. Chrisman's cell door. *Id*. at ¶ 37. Prior to the cell door being opened, one defendant detention officer told Ray and Harrison not to talk to Mr. Chrisman but to "just shoot him." *Id.* A defendant detention officer standing at the cell door then opened the door. *Id.* at ¶ 38. Ray and Harrison fired the pepper balls at Mr. Chrisman and hit him multiple times. *Id.* Plaintiff also alleges that the defendant detention officers sprayed pepper spray in Mr. Chrisman's face and covered his face with a spit hood. *Id*. at ¶ 40. While Mr. Chrisman was handcuffed and shackled and lying face down on the floor, the defendant detention officers executed knee drops onto Mr. Chrisman's back. *Id.*

---

[3] In *DuBois*, the court found that the plaintiff's pleading generally provided sufficient facts to support a plausible claim that his constitutional rights had been violated by sheriff deputies, who allegedly denied him medical care while he was in the county jail. However, the court concluded that dismissal was appropriate because the plaintiff had not alleged any specific actions by the individual defendants in participating in the constitutional violations. *DuBois*, 2014 WL 4810332, at *2.

9

Plaintiff alleges in Count Eight that Coburn, Rangel and Plascencia failed to intervene to prevent Ray and Harrison from firing pepper balls at Mr. Chrisman. *Id*. at ¶¶ 155-161. Thus, contrary to Defendants' contentions, the Amended Complaint does sufficiently identify the legal basis of Plaintiff's claims against these officers. *See e.g., Estate of Booker v. Gomez*, 745 F.3d 405, 422 (10th Cir. 2014) (explaining that a law enforcement official who either "engage[s] in a group effort" to use excessive force or "'who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983'" (*quoting Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996)); *Mascorro v. Billings*, 656 F.3d 1198, 1204 n. 5 (10th Cir. 2011) (stating that "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable [under § 1983] for his nonfeasance"); *see also Harper v. Tirello*, Case No. CIV-16-121-CVE-PJC, 2017 WL 6459803, at *6 (N.D. Okla. Dec. 18, 2017).

In Counts 16 through 20, Plaintiff alleges state law battery claims against the defendant detention officers. Plaintiff alleges that Mr. Chrisman was subjected to physical contact without his consent during his confinement. Under Oklahoma law, a battery occurs when the defendant acts with the intent of making a harmful or offensive contact with the person and the act results in a harmful or offensive contact. *Courtney v. Oklahoma ex rel., Dep't of Public Safety*, 722 F.3d 1216, 1228 (10th Cir. 2013); OUJI-CIV 19.6. Plaintiff sufficiently states claims for battery under Oklahoma law. *Selby v. Lindstrom*, 158 P. 1127-1128 (Okla. 1916) (where two or more are engaged in assault and battery, each is individually responsible for all injuries, though specific injury was by one alone; all

defendants being present, concerned in the commission of the battery, and directly committing some act constituting the offense, are joint tort-feasors and may be sued together); *Radford-Shelton and Associates Dental Lab., Inc. v. Saint Francis Hosp., Inc.*, 569 P.2d 506, 509 (Okla. Civ. App. 1976) (joint tortfeasors are those who act intentionally or in concert to injure a third party).

### (2) Plaintiff Has Adequately Alleged Facts that State a Plausible Claim Against Whetsel in his Individual Capacity for Excessive Force but not for Deliberate Indifference to Medical Needs

#### i. Serious Medical Needs

Whetsel contends that the Amended Complaint does not allege his personal involvement in denying medical care to Mr. Chrisman or that he had the sufficient state of mind required to establish a constitutional deprivation. Plaintiff's individual capacity claims against Whetsel are premised upon a theory of supervisory liability. A plaintiff may establish § 1983 liability of a defendant-supervisor by demonstrating that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). Under the Fourteenth Amendment, pretrial detainees are "entitled to the same degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

11

The Court finds Plaintiff has failed to state a claim under the Fourteenth Amendment against Whetsel for deliberate indifference to serious medical needs. The Amended Complaint contains no allegations that Whetsel knew of Mr. Chrisman's need for medical treatment.[4] A necessary element of a deliberate indifference claim is that the defendant knew of and disregarded an inmate's need for medical treatment. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). At most, the allegations of the Amended Complaint could be construed to support an inference that some jail personnel should have been aware of Mr. Chrisman's mental health and negligently failed to provide him medical treatment.

### ii. Inadequate Training – Excessive Force

However, the Court finds that Plaintiff's allegations are sufficient to state a valid constitutional claim for the use of excessive force. A supervisor is liable under § 1983 when "an 'affirmative link' exists between the deprivation and either the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise.'" *Specht v. Jensen*, 832 F.2d 1516, 1524 (10th Cir. 1987) (*quoting McKay v. Hammock*, 730 F.2d 1367, 1374 (10th Cir. 1984)). To show that link, Plaintiff must allege (1) personal involvement; (2) causation; and (3) state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760 (10th Cir. 2013) (*citing Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)).[5]

---

[4] Whetsel left the Oklahoma County Sheriff's Office in March 2017; Chrisman was a pretrial detainee at the jail April 18-19, 2017.

[5] A defendant does not have to be physically present at the time a Fourth Amendment violation occurs for liability to attach. *See Mink v. Knox*, 613 F.3d 995, 1001 (10th Cir.

12

Although federal courts appear to uniformly agree that the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) imposed a stricter liability standard for personal involvement, the Tenth Circuit has not decided the precise contours of that standard. *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014). Further, the Tenth Circuit has not overruled its post-*Iqbal* decision that "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights … secured by the Constitution." *Dodds*, 614 F.3d at 1199 (*quoting* 42 U.S.C. § 1983).

The second element requires Plaintiff to show that Whetsel's alleged actions caused the constitutional violation by setting "in motion a series of events [he] knew or reasonably should have known" would cause others to deprive Mr. Chrisman of his constitutional rights. *Poolaw v. Marcantel*, 565 F.3d 721, 733 (10th Cir. 2009); *Dodds*, 614 F.3d at 1195-1196. Under the third element, Plaintiff must show that Whetsel took the alleged actions with the requisite state of mind. Exactly what state of mind is required for individual liability depends on the type of claim a plaintiff brings. *Iqbal*, 556 U.S. at 676. The Fourteenth Amendment governs claims of excessive force brought by a pretrial detainee. *Estate of Booker*, 745 F.3d at 419. Plaintiff's excessive force claim against Whetsel is

---

2010). "Personal involvement does not require direct participation." *Wilson v. Montano*, 715 F.3d 847, 858 (10th Cir. 2013) (quoting *Dodds*, 614 F.3d at 1195). The fact that Plaintiff has not alleged that Chrisman had any direct contact with Whetsel or that Whetsel knew of Chrisman's specific circumstances is of no consequence. *Wilson*, 715 F.3d at 858.

based on Whetsel's failure to train the S.E.R.T. team in the use of excessive force against prisoners. In *City of Canton v. Harris*, the Supreme Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Harris*, 489 U.S. 378, 388 (1989). Plaintiff must allege a specific and obvious deficiency that closely relates to Chrisman's injury, so that it might fairly be said that Whetsel's policy was both deliberately indifferent to Chrisman's constitutional rights and the moving force behind his injury. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010).

Plaintiff alleges that Whetsel, as sheriff, created, approved and implemented policies and procedures that related to the training, hiring, supervision and retention of detention officers and the use of force on prisoners. Plaintiff further alleges that Whetsel maintained a S.E.R.T. team at the jail, *i.e.,* a specialized team of detention officers whose purpose was to respond to problem prisoners. Following the death of Mr. Chrisman, Plaintiff alleges that Sheriff Taylor publicly admitted the policies and procedures at the jail, specifically the policy allowing S.E.R.T. team members to self-train, was improper. This policy was implemented and used by Whetsel and continued by Sheriff Taylor in his first two months as sheriff.[6]

---

[6] *See e.g., Ireland v. Jefferson County Sheriff's Dep't, et al.*, 193 F. Supp. 2d 1201, 1222 (D. Colo. 2002), where a high school student injured during the Columbine school shooting by two armed students brought a § 1983 action against both the former sheriff of Jefferson County and the existing sheriff based on a failure to implement adequate policies or adequately train the sheriff's deputies to not violate the student's constitutional rights. The district court ultimately found that the former sheriff and the existing sheriff were not the moving force behind the student's constitutional deprivation. In *Ireland*, the former sheriff's tenure ended in January 1999. The existing sheriff began his tenure in January

Plaintiff states a cause of action against Whetsel by specifically pleading that Whetsel was the creator of actual polices or customs giving rise to the constitutional violations suffered by Chrisman, all of which is supported by Sheriff Taylor's public statements that many policies which pre-dated his tenure as sheriff were improper and in need of change. Given the frequency with which the S.E.R.T. team would encounter problem prisoners and the predictability that they may have to exercise force, Whetsel's decision to allow the S.E.R.T. team to self-train could reflect his deliberate indifference to constitutional rights. *Harris*, 489 U.S. at 390 and n. 10. Plaintiff has plausibly alleged that Whetsel's policy allowing the S.E.R.T. team to self-train set in motion the alleged excessive force used by the detention officers against Chrisman.

### (3) Plaintiff Has Adequately Alleged Facts that State Plausible Claims against the Board

Plaintiff has alleged facts sufficient for the Court to conclude that the Board and Sheriff Taylor had notice, either actual or constructive, that their failure to train the S.E.R.T. team could likely result in a constitutional violation and that the Board and Sheriff Taylor consciously chose to disregard the risk of harm. Here, Sheriff Taylor himself publicly admitted the inadequacy. Moreover, it is likely that if detention officers are self-trained, or not trained, and they have direct contact with problem prisoners, excessive force could result. *See e.g., Plinton v. County of Summit,* 540 F.3d 459, 464 (6th Cir. 2008)

---

1999. *Id.* at 1210. The school shooting occurred on April 20, 1999. The Court notes the propriety of naming both Whetsel and Sheriff Taylor as defendants here, particularly given Plaintiff's inadequate training theory, the alleged overlap of the use of the self-trained S.E.R.T. team by both defendants, and the fact that Sheriff Taylor had just begun his tenure as sheriff.

15

(*quoting Bd. of the County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 409 (1997)) ("[A] single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability."). The decision not to train the S.E.R.T. team or to allow them to "self-train," as alleged, demonstrates a conscious disregard for a high risk that the team would use excessive force in violation of a prisoner's federally protected rights.

To survive dismissal, Plaintiff "must show that [the Board and Taylor] knew [Chrisman] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009). The symptoms displayed by the detainee are relevant to this analysis. *Id.* An obvious risk could give rise to a factfinder concluding that a prison official subjectively knew of the substantial risk of harm. *Id.*

The Board stands in a different position than Whetsel when it comes to Plaintiff's claims regarding deprivation of medical attention. Whetsel left the Oklahoma County Sheriff's Office in March 2017. Plaintiff alleges that Sheriff Taylor and the Board were on notice of Mr. Chrisman's serious medical needs on April 18, 2017. As alleged in the Amended Complaint, Mr. Chrisman crashed his vehicle into a hospital lobby prior to being transported to the jail. His symptoms, as alleged, would have been apparent. He was purportedly experiencing hallucinations, was screaming, and was beating on the walls. Jail medical personnel noted that he needed to be placed on suicide watch. They were also aware of the prescription in his possession for Olanzapine, which revealed Mr. Chrisman

had been a recent patient at Griffin Memorial Hospital. Further, jail medical personnel were aware of his previous incarceration in early 2017, when it was recommended he undergo a mental health evaluation.

Plaintiff also alleges that Mr. Chrisman's injuries were the direct result of a widespread practice at the jail of "ignoring and failing to attend to the medical, emotional, mental and/or psychological needs and/or conditions of [j]ail prisoners." Pl.'s Am. Compl. [Doc. No. 20 at ¶ 66(G)]. Those allegations coupled with Plaintiff's allegations that the Board deliberately refused to pay the jail's contracted medical provider, and that Mr. Chrisman was the twentieth prisoner to die inside the jail since January 2016, state plausible claims against the Board. *See e.g., Revilla v. Glanz*, 7 F. Supp. 3d 1207, 1218 (N.D. Okla. 2014).

### C. John Doe Should Be Dismissed as a Defendant

On June 6, 2018, the Court directed Plaintiff to show cause as to why the action should not be dismissed without prejudice as to Defendant John Doe for failure to effect service of process within 90 days after filing the Complaint. [Doc. No. 37]. In Plaintiff's response to the Show Cause Order, Plaintiff consented to dismissal of Doe without prejudice. [Doc. No. 38]. Accordingly, Counts 7 and 21 are dismissed without prejudice. Count 8 is dismissed without prejudice as to Defendant Doe.

### D. Oklahoma's Governmental Torts Claim Act Bars Plaintiff's Negligence Claims

Plaintiff's negligence claims against the Board are subject to the Oklahoma Governmental Tort Claims Act, OKLA. STAT. tit. 51, § 151 *et seq.* ("OGTCA"). Pursuant to the OGTCA, the State extended sovereign immunity from tort liability to its political subdivisions and employees acting within the scope of their employment. OKLA. STAT. tit. 51, § 152.1(A). Citing to OKLA. STAT. tit. 51, § 155(25), the Board asserts that it is entitled to immunity from Plaintiff's negligence claims. In pertinent part, the statute provides that "[t]he state or a political subdivision shall not be liable if a loss or claim results from provision, equipping, operation or maintenance of any prison, jail or correctional facility."

Plaintiff's claims for negligent failure to provide medical care and negligent hiring, training, supervision and retention are all subject to dismissal pursuant to § 155(25), because they all result from operation of the Oklahoma County Jail. *See Hutto v. Davis*, 972 F. Supp. 1372, 1379 (W.D. Okla. 1997) ("Oklahoma law is clear … that a governmental entity is immune from suit for torts committed in the operation of a jail."); *Purvey v. State,* 905 P.2d 770, 771 (Okla. 1995) (exemption applies to negligence by prison official in issuing chainsaws to prisoners without proper training); *Redding v. State*, 882 P.2d 61, 63 (Okla. 1994); *Medina v. State*, 871 P.2d 1379, 1384 (Okla. 1993) (the dispensing of medication to an inmate in a state penal institution by a state employee is a function performed in the operation of the institution and is exempt from tort liability); *Snow v. Bd. of County Comm'rs of the County of McClain, et al.*, No. CIV-14-911-HE, 2014 WL 7335319, at *3 (W.D. Okla. Dec. 19, 2014) (the plaintiffs conceded that their

negligence claims were precluded by § 155(25) and the sovereign immunity doctrine; the case arose after the death of a jail inmate who was a Type I insulin dependent diabetic who did not receive insulin or treatment for his diabetes for several days while in the defendants' custody); *Flurry v. Bd. of County Comm'rs of the County of Okla., et al.,* No. CIV-15-090-R, 2015 WL 1542373, at *5 (W.D. Okla. April 7, 2015). Accordingly, Counts 10 through 14 are dismissed with prejudice.[7]

In *Bosh*, the Oklahoma Supreme Court recognized a private action for excessive force under Article II, § 30 of the Oklahoma Constitution, notwithstanding provisions of the OGTCA barring such claims. *Bosh v. Cherokee County Bldg. Auth.*, 305 P.3d 994, 1001 (Okla. 2013). Plaintiff concedes that she has not specifically pled her claims with a citation to Article II, § 30. *See* Pl.'s Resp. [Doc. No. 30 at 26]. As such, she seeks leave to amend Count 15 of her Amended Complaint. *Id.* The Court has reviewed the Amended Complaint and finds that no such claim has been pled. Accordingly, Count 15 is dismissed without prejudice. Plaintiff is granted leave to file a Second Amended Complaint within 21 days from the date of this Order.

## CONCLUSION

For the foregoing reasons, Defendants' Joint Motion to Dismiss [Doc. No. 23] and Defendant Colton Ray's Motion to Dismiss [Doc. No. 26], which Defendant Brian Harrison adopted [Doc. Nos. 35, 36] are GRANTED in part and DENIED in part.

---

[7] Because Plaintiff's negligence claims are within the scope of the correctional facility exemption, it is unnecessary to determine whether the discretionary function exemption of OKLA. STAT. tit. 51, § 155(5) would also apply.

Oklahoma County and Sheriff Taylor are terminated as parties to this action. Counts 1 and 9 against Whetsel as to deprivation of medical attention for Chrisman's serious medical needs are dismissed without prejudice. Plaintiff's claim against Whetsel for excessive force under the theory of inadequate training survives under Counts 1 and 9. Count 7 is dismissed without prejudice. Count 8 only as to Defendant Doe is dismissed without prejudice. Counts 10 through 14 are dismissed with prejudice. Count 15 is dismissed without prejudice, subject to Plaintiff filing a Second Amended Complaint within 21 days from the date of this Order. Count 21 is dismissed without prejudice.

IT IS SO ORDERED this 7th day of September 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE