IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELIZABETH ANN CHRISMAN, <br> as Special Administrator of the Estate of <br> Charlton Cash Chrisman, Deceased, and <br> Individually as Surviving Mother and <br> on behalf of the Heirs of <br> Charlton Cash Chrisman, Deceased. <br><br> Plaintiff, <br><br> v. <br><br> BOARD OF COUNTY COMMISSIONERS <br> OF OKLAHOMA COUNTY, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. CIV-17-1309-D <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER

Before the Court is Defendants' Motion for Protective Order [Doc. No. 119], to which Plaintiff has responded in opposition [Doc. No. 139], and Defendants have replied [Doc. No. 142].[1] Also at issue is Plaintiff's Combined Second Motion to Compel Production of Documents from Defendant Board of County Commissioners and Motion to Compel Deposition Testimony of Defendant John Whetsel [Doc. No. 120], to which Defendants have responded in opposition [Doc. No. 138].[2] Upon consideration of these filings, the Court finds no need for a hearing, and issues its ruling.

---

[1] Defendants also filed Notices of Erratum [Doc. Nos. 143, 144] in connection with their reply.

[2] Plaintiff filed a brief in support of her motion [Doc. No. 121], which the Court has also considered.

## BACKGROUND

This case arises out of the death of Charlton Cash Chrisman on April 19, 2017, while he was in Defendants' custody at the Oklahoma County Jail. Plaintiff Elizabeth Ann Chrisman, as Mr. Chrisman's mother and Special Administrator of his estate, asserts claims against the Board of County Commissioners of Oklahoma County ("the Board"), John Whetsel, and detention officers Michael Coburn, Kristian Rangel, Francisco Plascencia, Colton Ray, and Brian Harrison. Plaintiff's federal claims, which arise under 42 U.S.C. § 1983, are based on Chrisman's Fourth Amendment right to be free from unreasonable seizures and excessive force, and his Fourteenth Amendment due process rights as a pretrial detainee to appropriate medical care. Plaintiff also asserts state law claims for battery and excessive force. The Second Amended Complaint [Doc. No. 45] is the operative pleading.

Defendants seek a protective order barring Plaintiff's counsel from questioning Whetsel about funding and staffing issues at the jail, and a lawsuit involving the jail's former healthcare provider that was filed in 2015.[3] Plaintiff seeks to compel Defendants to produce documents relating to budgetary and staffing matters at the jail from 2014 through 2018, and to compel deposition testimony from Whetsel. Specifically, Plaintiff wants to ask Whetsel about (1) funding and staffing issues at the jail; (2) the 2008 United States Department of Justice ("DOJ") report; (3) the *Armor* lawsuit; and (4) an investigation/audit of the Oklahoma County Sheriff's Office in 2016 and 2017.

---

[3] *See Armor Corr. Health Services, Inc. v. The Bd. of Cnty. Comm'rs of Okla. Cnty.*, Oklahoma County District Court, Case No. CJ-2015-5602 ("the *Armor* lawsuit").

Whetsel, who was deposed by Plaintiff's counsel on May 20, 2020, refused to answer the following questions, which Plaintiff's counsel certified for the Court's review:

Question: What led you to retire?

Question: Sheriff, at the time that you resigned, the sheriff's office was under investigation, was it not?

Question: When you said that there were problems with overall funding, what were you talking about?

Question: Why was additional funding needed?

Question: What funding was necessary to operate the jail?

Question: Sheriff, did you retire because of the investigation that was going on?

Question: Sheriff, my question is, were you ever made aware that the supreme court had affirmed the finding of the trial court regarding this lawsuit and the liability of the county to pay Armor $3.3 million?

Question: Who made the decision not to pay Armor?

Question: Who was aware that Armor was not paid?

Question: Was the board of county commissioners aware that Armor was not paid?

Question: In October of 2016, an audit had been conducted regarding expenditures by the sheriff's office and you specifically. Is that correct?

Question: Did the investigation or audit or combined audit and investigation ever conclude?

Question: Was there ever a determination of fact one way or another regarding the audit and investigation?

Question: Did the county seek additional funding to meet the required staffing levels?

3

*See* Whetsel's Dep. Tr. at 49, 51, 56–58, 74–77, 90 [Doc. No. 119-1].

Plaintiff's production requests and the Board's responses are attached to Plaintiff's motion at Exhibit 9. [Doc. No. 120-9 at 4–7]. The Board asserts that Production Request Nos. 62–66 are overly broad and not relevant or proportional to any party's claims or defenses. Additionally, the Board asserts that—aside from the allegation that Defendants "failed[ed] and refus[ed] to pay the Jail's contracted medical care provider millions of dollars"—Plaintiff made no other allegations in her Second Amended Complaint about funding issues at the Oklahoma County Jail.

## DISCUSSION

Pursuant to FED. R. CIV. P. 26(c)(1)(D), the Court "may, for good cause shown, issue an order to protect a party or person from annoyance, embarrassment, [or] oppression . . . [by] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." The party seeking the protective order has the burden of demonstrating good cause. *Landry v. Swire Oilfield Services, L.L.C.*, 323 F.R.D. 360, 383 (D.N.M. 2018). Broad or conclusory statements are insufficient; the movant must point to specific facts to support the assertion that a protective order is necessary. *Velasquez v. Frontier Med. Equip. Inc.*, 229 F.R.D. 197, 200 (D.N.M. 2005) (denying the defendants' request for a protective order where no specific harm was asserted); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (internal quotation marks omitted) (to establish good cause for a protective order, courts require "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements"). The decision to grant a protective order under FED. R. CIV. P. 26(c) is discretionary. *Thomas v. Int'l Bus.*

*Machines*, 48 F.3d 478, 482 (10th Cir. 1995); *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 583 (D. Kan. 2008).

Relevance, however, does "bear[] on the protective order analysis." *Landry*, 323 F.R.D. at 398. The burden of demonstrating relevance is on the party seeking discovery. *Id.* at 381. Pursuant to Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." FED. R. CIV. P. 26(b)(1). The considerations that bear on proportionality include: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Following the 2015 Amendment to Rule 26, "relevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Tanner v. McMurray*, 405 F. Supp. 3d 1115, 1183 (D.N.M. 2019) (internal quotation marks and citations omitted). Thus, relevance for purposes of discovery remains broader than relevance for purposes of trial admissibility. *Reibert v. CSAA Fire & Cas. Ins. Co.*, No. 17-CV-350-CVE-JFJ, 2018 WL 279348, at *3 (N.D. Okla. Jan. 3, 2018). While the scope of discovery is broad, it is not unlimited and is further defined by proportionality considerations. *Ramos v. Banner Health*, No. 15-CV-2556-WJM-MJW, 2018 WL 4700707, at *3 (D. Colo. Aug. 8, 2018).

A plaintiff's broad theory of the case does not necessarily justify broad discovery. *Reibert*, 2018 WL 279348, at *4. Further, courts should thwart fishing expeditions. *Id*.

Accordingly, Defendants must demonstrate good cause for a protective order, and Plaintiff must demonstrate that the deposition inquiries of Whetsel and the production requests are relevant.

### A. Certified Deposition Questions

As discussed *supra*, Plaintiff's counsel certified several questions for the Court's review. The questions involve four topics of inquiry: (1) funding and staffing issues at the jail; (2) the DOJ report; (3) the *Armor* lawsuit; and (4) an investigation of the sheriff's office in 2016 and 2017. Pursuant to FED. R. CIV. P. 30(c)(2), counsel may instruct a deposition witness "not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to suspend a deposition in order to present a motion under Rule 30(d)(3)." *Resol. Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995). "It is inappropriate to instruct a witness not to answer a question on the basis of relevance." *Id*.

Here, counsel instructed Whetsel not to answer, citing relevance objections. For example, when Plaintiff's counsel asked Whetsel what led him to retire, Whetsel's counsel asserted the inquiry was "irrelevant" and had "nothing to do with the lawsuit." *See* Whetsel's Dep. Tr. at 49 [Doc. No. 119-1 at 13]. Further, Whetsel's counsel instructed him not to answer, and advised he would move for a protective order when Plaintiff's counsel asked if "the sheriff's office was under investigation" at the time of Whetsel's

6

retirement.  *Id*.  Likewise, when Whetsel was asked about the reference in his retirement letter to problems with overall funding, his counsel instructed him not to answer, advised he would move for a protective order, and stated all questions regarding funding were irrelevant.  *Id.* at 51.  Counsel gave the same instructions when Whetsel was questioned about the *Armor* lawsuit and the investigation of the sheriff's office in 2016 and 2017.  *Id*. at 74–77.

Whetsel's refusal to answer violates his obligation to submit to discovery, and interferes with Plaintiff's right to discovery.  *See, e.g., Harley-Davison Credit Corp. v. Flint*, No. 13-CV-2026-KHV-TJJ, 2014 WL 958715, at \*4 (D. Kan. Mar. 12, 2014) (concluding that the witness's "refusal to answer violated his obligation to submit to discovery, and interfered with [the plaintiff's] right to discovery").  The rules "are clear"— "[a] witness may state an objection, which will be noted on the record, but the witness must then answer the question.  A witness may not refuse to answer a question . . . on the basis of relevance."  *Id*.

Defendants assert that funding issues are not relevant to Plaintiff's claims because Plaintiff's only allegation in her Second Amended Complaint related to funding is Defendants "failed[ed] and refus[ed] to pay the Jail's contracted medical care provider millions of dollars."  Second Am. Compl. at ¶ 63(H) [Doc. No. 45 at 16].  Further, Defendants assert that, if Plaintiff had made additional allegations about funding, "they would have likely been subject to dismissal akin to those dismissed by this Court in *Willis v. Oklahoma County Detention Center*."  [Doc. No. 138 at 16]; *see also Willis v. Okla. Cnty. Det. Ctr.*, No. CIV-18-323-D, 2019 WL 4397338, at \*5 (W.D. Okla. Sept. 13, 2019).

7

Rule 30, however, "provides no basis to refuse to answer a question on a belief that the plaintiff has failed to state a claim under Rule 12(c) or Rule 12(b)(6)." *Flint*, 2014 WL 958715, at *4.

Pursuant to Rule 37(a)(3)(B)(i), a party seeking discovery may move for an order compelling an answer if a deponent fails to answer a question asked at an oral deposition. FED. R. CIV. P. 37(a)(3)(B)(i). Concurrently, under Rule 30(d)(3)(A), a deponent or party can move to terminate or limit a deposition if the questions are designed to harass or embarrass a deponent or party. *See* FED. R. CIV. P. 30(d)(3)(A).[4] Defendants did not move to terminate or limit Whetsel's deposition, but rather counsel instructed Whetsel not to answer on the basis of relevance. No assertion was made during the deposition that counsel's questions were designed to harass or embarrass Whetsel.

Nevertheless, relevance does bear on the protective order analysis. Defendants assert that "the relevance of funding questions is *at best* not 'readily apparent.'" [Doc. No. 138 at 17]. Plaintiff, as the party seeking the discovery, has the burden of demonstrating relevance here because relevance "is not readily apparent." *Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 523 (D. Kan. 2010). The Court agrees with Defendants' assertion that the allegations offered by Plaintiff in her motion to compel are more appropriate for a motion to amend. The Court has reviewed Plaintiff's Second Amended Complaint, and there are no failure-to-fund allegations included. Likewise, Plaintiff does not allege that

---

[4] "If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order." FED. R. CIV. P. 30(d)(3)(A). Pursuant to Rule 30(d)(3)(B), the Court "may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c)." FED. R. CIV. P. 30(d)(3)(B).

unqualified persons were hired at low pay, that the jail was grossly understaffed, that jail funds were misappropriated, or that a lack of funding contributed to the county's failure to attract qualified personnel. Plaintiff's broad theory of the case, offered in her motion to compel, does not justify broad discovery. *Reibert*, 2018 WL 279348, at *4.

Plaintiff's excessive force claim against the Board and Whetsel is based on the theory that Whetsel failed to train the S.E.R.T. team in the use of excessive force against prisoners, or allowed them to self-train. She asserts that the Board created an environment at the jail that included "ignoring and failing to attend to the medical, emotional, mental and/or psychological needs and/or conditions of [j]ail prisoners." Pl.'s Second Am. Compl. [Doc. No. 45 at ¶ 63(G)]. Consequently, Plaintiff does not allege that unqualified medical personnel were hired or that the jail was understaffed.

The amendments to Rule 26 "signal[] to the [C]ourt that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signal[] to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." *Bhasker v. Kemper Cas. Ins. Co.*, 361 F. Supp. 3d 1045, 1113 (D.N.M. 2019). Plaintiff's allegation that the Board and/or Whetsel deliberately refused to pay the jail's contracted medical care provider millions of dollars could imply that someone misappropriated funds, but there is no reference in the Second Amended Complaint to the investigation of the sheriff's office or Whetsel's abrupt retirement after re-election. Nor is there an allegation that a lack of funding caused or contributed to Chrisman's death. Further, there is no allegation that the Board's reported failure to pay Armor resulted in Chrisman receiving inadequate medical care.

9

Additionally, the *Armor* lawsuit predates Chrisman's death by two-to-three years. It was filed on October 14, 2015; Chrisman died on April 19, 2017. Although Plaintiff asserts the commencement of the lawsuit does not equate to the life of the lawsuit, the opinion from the Oklahoma Supreme Court clearly states that the medical services in question were for the period January 1, 2014 through June 30, 2015. [Doc. No. 139-6 at 2]. Again, there is no allegation that the *Armor* lawsuit contributed to or caused Chrisman's death or that the Board and/or Whetsel were withholding payment from the medical provider in April 2017.

Plaintiff also seeks to compel deposition testimony from Whetsel concerning the 2008 DOJ report. This area of inquiry was not included in the certified questions to the Court, and it was only briefly covered in the deposition. *See* Whetsel's Dep. Tr. at 61, 112 [Doc. No. 119-1]. Further, there is no reference to the 2008 DOJ report in Plaintiff's Second Amended Complaint. Consequently, Plaintiff has failed to demonstrate how a report describing conditions at the jail in 2007 would be relevant to Plaintiff's claims involving Chrisman's death in 2017. There is no allegation that "the same conditions noted in the 2008 DOJ Report still existed more than [ten] years later in [2017]." *Turner v. Bd. of Cnty. Comm'rs of Cnty. of Okla.*, No. CIV-18-36-SLP, 2019 WL 1997473, at *3 (W.D. Okla. May 6, 2019).

### B. Production Requests

Discovery in this case concluded on August 14, 2020, with the exception of the completion of Whetsel's deposition. [Doc. No. 117]. Plaintiff filed her motion to compel

10

on August 14, 2020. [Doc. No. 120]. However, Plaintiff received Defendants' responses and objections to the production requests on March 30, 2020. [Doc. No. 120-9 at 8–9]. Although Rule 37 does not specify a time limit, a party seeking to compel discovery must do so in a timely manner. *See, e.g., Buttler v. Benson*, 193 F.R.D. 664, 666 (D. Colo. 2000) (concluding that a "party cannot ignore available discovery remedies for months"); *Cont'l Indus., Inc. v. Integrated Logistics Solutions, LLC*, 211 F.R.D. 442, 444 (N.D. Okla. 2002) (concluding that a motion to compel filed after the discovery cutoff was untimely and resulted in a waiver of any discovery violations); *Barnes v. United States*, No. 11-CV-582-HE-PJC, 2013 WL 12425651, at *2 (N.D. Okla. Oct. 15, 2013) (denying a motion to compel that was filed on the day discovery closed).

Although trial is not imminent in this case, dispositive motions are pending. The granting of Plaintiff's motion to compel would require discovery to be re-opened. This Court has already allowed nineteen months for discovery. [Doc. Nos. 62, 117]. Moreover, Plaintiff has not provided an adequate explanation for the delay, or a compelling reason to extend discovery. *See Barnes*, 2013 WL 12425651, at *2 (timeliness depends on the factual circumstances, including the amount of time allotted for discovery; the posture of the case; the reasons for the delay; whether discovery would have to be re-opened; and whether dispositive motions are pending); *see also* FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

Further, as discussed *supra*, Plaintiff has not made any failure-to-fund allegations in her Second Amended Complaint; thus, the documents requested are not relevant to Plaintiff's claims.

## CONCLUSION

Based on the foregoing, Defendants' Motion for Protective Order [Doc. No. 119] is **GRANTED**. Plaintiff's Combined Second Motion to Compel Production of Documents from Defendant Board of County Commissioners and Motion to Compel Deposition Testimony of Defendant John Whetsel [Doc. No. 120] is **DENIED**.[5]

**IT IS SO ORDERED** this 30th day of November 2020.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[5] The Court noted, *supra*, counsel's improper instructions not to answer deposition questions. Counsel is warned not to repeat such conduct in future depositions.